Eastern District of Kentucky
FILED
AUG 15 2024
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**UNITED STATES OF AMERICA**

**V.** **INDICTMENT NO.** 5:24-CR-73-DCR

**YONGJIAN YOU**

* * * * *

**THE GRAND JURY CHARGES:**

## BACKGROUND

1. Gift card tampering is emerging as a new dimension of organized retail crime across the United States. Gift card tampering, in general, is the process of compromising a gift card package to steal sensitive information, then placing the package back into commerce at a retailer to be sold to unknowing consumers. After an unwary consumer loads a tampered gift card with money at the point of sale, the funds from the card are stolen.

2. Individuals and organizations who engage in gift card tampering often target brands that can be redeemed for goods, or items that can be liquidated on digital marketplaces. Large retailers, such as Kroger, are primary targets due to the high levels of consumer traffic and quick inventory turnover.

3. Individuals and organizations who engage in gift card tampering generally employ a five-step process:

a. First, steal the gift cards. Individuals steal gift cards in large numbers from stores, generally targeting retailers and brands with fewer protective measures in place, such as tamper-resistant packaging.

b. Second, compromise the gift cards. The individual who stole the gift cards may mail them to a different location to have the gift cards compromised by, among other techniques, ensuring that those engaging in gift card tampering have access to the pertinent sensitive giftcard information, altering the pertinent giftcard information, and the like. This can occur by, for example, revealing, altering, or defacing the PIN code, or by replacing, altering, or defacing the barcode. This step helps to ensure that the individuals and organizations engaged in gift card tampering ultimately have access to funds loaded onto the card by an unknowing consumer.

c. Third, place the tampered gift cards back in stores. After the gift cards are compromised, an individual goes into a retailer and places the tampered cards, which are attempted to be made to appear normal, back onto the store's shelves for purchase by unknowing consumers.

d. Fourth, determine when a tampered gift card is activated by a consumer. Confirmation of activation may be accomplished through, for example, (1) the placement of cards in high-traffic retailers to increase the likelihood of activation within a short period of time; (2) conducting balance inquiries with the merchant; (3) conducting customer service inquiries; (4) attempting to conduct purchases with the card information; and (5) attempting to load a tampered card into a mobile wallet or merchant application.

e. Fifth, monetize the gift cards. Once individuals and organizations engaged in gift card tampering have confirmed that a tampered gift card is activated, they monetize the card by, among other ways, remotely draining the card of value via the information they have stored about the card, or using the card to purchase other merchandise.

4. **YONGJIAN YOU** was one person engaged in such a general gift card tampering scheme.

5. On or about July 8, 2024, law enforcement encountered **YOU** at Kroger, 1650 Bryan Station Road, Lexington, Kentucky, in possession of approximately 54 untampered gift cards. Five tampered Amazon gift cards were then located on the shelves in the gift card section of the Bryan Station Kroger. Kroger surveillance footage from multiple Kroger stores in Lexington and Versailles revealed **YOU**'s presence on or around July 8, 2024. Personnel located approximately 216 tampered gift cards placed on the shelves at various Kroger stores in the greater Lexington area. A search of **YOU**'s vehicle, located in the Bryan Station Kroger parking lot, revealed his possession of approximately 871 additional tampered gift cards, as well as approximately 998 additional untampered gift cards.

6. The investigation also led law enforcement to two packages that **YOU** shipped. First, **YOU** mailed a United Parcel Service (UPS) package from Ohio to California on or about July 6, 2024. This package contained approximately 1,183 untampered gift cards. Second, **YOU** mailed a United States Postal Service (USPS) package from Lexington, Kentucky, to California on or about July 8, 2024, shortly before

being apprehended at the Bryan Station Kroger. This package contained approximately 1,468 untampered gift cards.

7. **YOU**'s mailings (containing untampered gift cards), **YOU**'s actions at various Kroger locations (including placing tampered cards back on the shelves and possessing untampered cards), and the contents of **YOU**'s vehicle (including both tampered and untampered gift cards) are consistent with the general modus operandi of the gift card tampering scheme, where an individual (here, **YOU**) steals untampered gift cards, mails them to a third-party to be compromised, receives them back, and places them back on retailer shelves to be sold to unwary consumers. The total potential loss from the gift cards obtained only from **YOU**'s vehicle and packages is approximately $1,047,900.00.

**COUNT 1**
**18 U.S.C. § 1341**

8. All of the above allegations are realleged and incorporated by reference as if fully set forth herein.

9. On or about July 8, 2024, in Fayette County, in the Eastern District of Kentucky,

**YONGJIAN YOU,**

with the intent to defraud, devised and willfully participated in a scheme or artifice to defraud and to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises—that is, a gift card tampering scheme or artifice, as described in Paragraphs 1-7 of this Indictment—and for the purpose of executing such

scheme and artifice to defraud and to deprive, did knowingly place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service—that is, the USPS mailing from Lexington, Kentucky to California containing approximately 1,468 untampered gift cards, all in violation of 18 U.S.C. § 1341.

**COUNT 2**
**18 U.S.C. § 1029(a)(3)**

10. All of the above allegations are realleged and incorporated by reference as if fully set forth herein.

11. On or about July 8, 2024, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**YONGJIAN YOU**

knowingly and with intent to defraud, possessed fifteen or more devices which are counterfeit or unauthorized access devices, that is, the tampered gift cards that **YOU** placed back on Kroger shelves and the approximate 871 tampered gift cards that **YOU** possessed in his vehicle, said possession affecting interstate and foreign commerce, all in violation of 18 U.S.C. § 1029(a)(3).

**FORFEITURE ALLEGATIONS**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(2)(B)**
**18 U.S.C. §§ 1029(c)(1)(C)**
**28 U.S.C. § 2461(c)**

12. By virtue of the commission of the offenses alleged in Counts 1 and 2 of the Indictment, **YONGJIAN YOU** shall forfeit to the United States any property, which

constitutes or is derived from proceeds traceable to the violations of 18 U.S.C. § 1341 and/or 1029. Any and all interest that **YONGJIAN YOU** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(B) and 28 U.S.C. § 2461(c).

13. By virtue of the commission of the offense alleged in Count 2 of the Indictment, **YONGJIAN YOU** shall forfeit to the United States any personal property used or intended to be used to commit the violation of 18 U.S.C. § 1029. Any and all interest that **YONGJIAN YOU** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 1029(c)(1)(C).

14. The property to be forfeited includes, but is not limited to, the following:

**PERSONAL PROPERTY:**

a. 4,814 gift cards seized from the Defendant's person and vehicle and from seized USPS and UPS packages;
b. iPhone 15, gray in color, seized from the Defendant; and
c. Unknown brand and model cell phone seized from the Defendant.

15. If any of the property listed above, as a result of any act or omission of the Defendant(s), (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

**A TRUE BILL**

[redacted]

**FOREPERSON**

**CARLTON S. SHIER, IV**
**UNITED STATES ATTORNEY**

# PENALTIES

**COUNT 1:** Not more than 20 years imprisonment; fine of $250,000 or twice the gross gain or loss, whichever is greater; and not more than 3 years supervised release.

**COUNT 2:** Not more than 10 years imprisonment; fine of $250,000 or twice the gross gain or loss, whichever is greater; and not more than 3 years supervised release.

**PLUS:** Mandatory special assessment of $100 per Count.

**PLUS:** Forfeiture.

**PLUS:** Restitution.